J-S51015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAKOTA JAMES SWEIGART | : | |
| | : | |
| Appellant | : | No. 1959 MDA 2018 |

Appeal from the Judgment of Sentence Entered November 2, 2018
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004227-2017

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: NOVEMBER 20, 2019**

Dakota James Sweigart appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas on November 2, 2018 following his conviction of indecent assault, unlawful contact with a minor, corruption of minors, and aggravated indecent assault. Sweigart challenges the denial of his pre-trial motion which sought to exclude incriminating statements he made during a police interview. We affirm.

On April 30, 2018, a suppression hearing was held, after which the suppression court made the following relevant findings of fact:

> These charges result from an allegation that on or about April 28, 2017, [Sweigart], who was nineteen years old, digitally penetrated the vagina of a fifteen-year old female and fondled her breasts. On June 20, 2017, after the victim disclosed this alleged contact, Detective Graeme Quinn from the Ephrata Police Department interviewed [Sweigart] regarding the allegations. This initial interview lasted approximately one hour and took place at the Ephrata Police Department in Interview Room 4. [Sweigart]

was told that he was not under arrest, that he was free to leave at any time, and Detective Quinn even provided directions on how to exit the interview room and return to the lobby of the station. During the interview [Sweigart] acknowledged that he was with the alleged victim on the date in question and was aware of her young age, but denied any inappropriate contact with her. Detective Quinn then asked [Sweigart] if he would be willing to take a polygraph exam to assist in the investigation and [Sweigart] indicated that he would.

The next day [Sweigart] entered the Ephrata Police Department to take the polygraph exam and was escorted to the polygraph suite by polygraph examiner Detective Peter Sheppard. As a part of the pre-test interview, the polygraph exam procedure was explained to [Sweigart] and he signed a consent form at 10:07 a.m. that contained *Miranda* warnings as well as a notification that "the polygraph examination is voluntary." The pre-test interview lasted approximately an hour and a half.

To conduct the polygraph exam, Detective Sheppard affixed several sensors to [Sweigart]'s body including a chest strap, an abdominal strap, a blood pressure cuff, and two sensors that clipped to his fingers. Detective Sheppard then went through approximately half an hour of asking questions regarding the alleged incident and then scoring [Sweigart]'s answers. During the post-test interview with [Sweigart], Detective Sheppard reviewed the results with him and told him that the results of the exam indicated that he was being deceptive about the contact with the victim. [Sweigart] volunteered the information that he had been attempting to beat the polygraph exam by reciting song lyrics in his head as a countermeasure to the exam. After the post interview concluded[,] Detective Sheppard asked [Sweigart] whether he believed that Detective Quinn wanted to speak with him and [Sweigart] said that he did not know. Detective Sheppard then excused himself, spoke with Detective Quinn about the results of the test, and returned, telling [Sweigart] "[n]ow, he does want to talk to you quick before you go." [Sweigart] replied "OK". He was then escorted by Detective Sheppard to Interview Room 4 where he had been questioned by Detective Quinn less than twenty-four hours before.

Detective Quinn did not give [Sweigart] *Miranda* warnings before this second interview and did not specifically recall telling [Sweigart] that he was free to leave although he testified that it

was his usual practice to do so. Detective Quinn confronted [Sweigart] with the results of the failed polygraph and his attempts to beat the exam. After about fifteen minutes Detective Quinn asked [Sweigart] if he wanted to make another statement and "set the record straight" which [Sweigart] agreed to. At approximately 12:38 p.m. [Sweigart] made incriminating statements in a recorded four-minute statement. Detective Quinn testified that at no time during the second interview was [Sweigart] under arrest, put in handcuffs, made any promises, and throughout their interactions he appeared calm. After the conclusion of the interview, [Sweigart] left the station and charges were subsequently filed on July 5, 2017.

Trial Court Findings of Fact and Conclusions of Law, 7/18/2018, at 1-3 (citations and footnotes omitted). The suppression court concluded that Sweigart's statements "were voluntary and the police were not obligated to re-warn [Sweigart] of his *Miranda* rights" and therefore denied the motion to suppress. *Id.*, at 1.

Following a jury trial, Sweigart was convicted of the above charges. The trial court sentenced him to an aggregate sentence of two to five years' imprisonment. This timely appeal follows.

On appeal, Sweigart argues the trial court erred in denying his pretrial motion to suppress. Specifically, Sweigart contends he was in custody at the time of his post-polygraph interview with Detective Quinn and therefore *Miranda* warnings were required. He further argues the *Miranda* warnings given to him prior to the polygraph examination became stale by the time of the subsequent interview due to length of time elapsed, change of room, and a new detective conducting the interview.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing." **Commonwealth v. Caple**, 121 A.3d 511, 517 (Pa. Super. 2015) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted).

> Before an individual is subjected to a custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warning as to those rights. Statements obtained by the police during a custodial interrogation without prior **Miranda** warnings

- 4 -

are presumed to be given without a knowing and intelligent waiver, and are subject to suppression. To determine if a person is in custody for **Miranda** purposes, however, depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

**Commonwealth v. Johnson**, 727 A.2d 1089, 1100 (Pa. 1999).

We agree with the suppression court that during the post-polygraph interview, Sweigart was not in custody, and therefore not subject to a custodial interrogation, such that **Miranda** warnings were required. Sweigart had arrived at the police station on his own free will to voluntarily take the polygraph examination. **See** N.T., 4/30/18, at 4-9, 31. He then voluntarily stayed after the examination and followed Detective Sheppard to Interview Room 4 to speak with Detective Quinn. **See id**., at 12-14. He was not restrained in any manner and remained calm throughout the interview. **See id**., at 14, 36. There is no evidence that either detective threatened him or otherwise made any impermissible inducements in exchange for his confession. There was no suggestion by Sweigart that he wanted questioning to cease or that he objected to the questioning. Sweigart was not handcuffed or arrested at the end of the interview, and left the station on his own. **See id**., at 37.

In these circumstances, we do not find Sweigart's freedom of action was so restricted by the police questioning that he could reasonably believe that he was not free to terminate the interview. Because we find he was not subject

to a custodial interrogation, no ***Miranda*** warnings were required. Similarly, since we find there was no custodial interrogation, Sweigart is entitled to no relief for the failure to "refresh" the ***Miranda*** warning that Detective Sheppard, in an abundance of caution, had apprised Sweigart of in the written agreement signed by Sweigart prior to the polygraph examination.

As we find the trial court did not err in denying suppression of Sweigart's motion to suppress, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2019